UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| MICHAEL MANESS, Individually and on behalf of those Similarly Situated,<br><br>v.<br><br>QUALITY INTEGRATED SERVICES, INC. | **Case No.**<br><br><br>Collective Action<br><br>Jury Trial Demanded |

## ORIGINAL COMPLAINT

### SUMMARY

1. Plaintiff Michael Maness (Maness) brings this lawsuit to recover unpaid overtime wages and other damages from Defendant Quality Integrated Services, Inc. (QIS) under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. (FLSA).

2. QIS is an oil and gas and construction staffing company. QIS employs oilfield personnel to carry out its work.

3. Maness and the other workers like him regularly worked for QIS in excess of forty (40) hours each week.

4. But QIS does not pay Maness and the other workers like him overtime for those hours.

5. Instead of paying overtime for hours worked in excess of 40 in a single workweek, QIS pays Maness and the other workers like him a daily rate with no overtime compensation in violation of the FLSA.

6. This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

## JURISDICTION & VENUE

7. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

8. Venue is proper because the Parties have agreed to bring this collective action in this District and Division.

## PARTIES

9. Maness worked for QIS as a Coating Inspector from approximately August 2018 until December 2018.

10. Throughout his employment with QIS, QIS paid him a day-rate with no overtime compensation.

11. Maness' consent to be a party plaintiff is attached as Exhibit A.

12. Maness brings this action on behalf of himself and all other similarly situated workers who were paid by QIS's day-rate system. QIS paid each of these workers a flat amount for each day worked and failed to pay them overtime for all hours that they worked in excess of 40 hours in a workweek in accordance with the FLSA.

13. The class of similarly situated employees or putative class members sought to be certified is defined as follows:

> **All employees of Quality Integrated Services, Inc. who were paid a day rate with no overtime in the past three (3) years. ("Putative Class Members")**

14. Defendant Quality Integrated Services, Inc. is an Oklahoma corporation doing business throughout the United States, including Texas. QIS may be served through its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

## COVERAGE UNDER THE FLSA

15. At all relevant times, QIS has been an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

16. At all relevant times, QIS has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

17. At all relevant times, QIS has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce – including cell phones, computers, hard hats, oilfield equipment, and walkie talkies – by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $1,000,000.00

18. At all relevant times, Maness and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

19. As will be shown through this litigation, QIS treated Maness the Putative Class Members as employees and uniformly dictated the pay practices Maness and its other employees were subjected to.

## FACTS

20. QIS provides pipeline inspection and construction management services throughout the contiguous 48 United States, Alaska, and Hawaii, including the Marcellus, Utica, Barnett, Eagle Ford, Haynesville, Fayetteville, and Bakkan shale areas.

21. To complete its business objectives, QIS hires personnel (like Maness) to perform work.

3

22. Many of these individuals worked for QIS on a day-rate basis and make up the proposed Putative Class. While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

23. QIS paid Maness and the Putative Class Members a flat sum for each day worked, regardless of the number of hours that they worked that day (or in that workweek) and failed to provide them with overtime pay for hours that they worked in excess of forty (40) hours in a workweek.

24. QIS did not pay Maness and the Putative Class Members additional wages when they worked over 40 hours in a workweek.

25. But Maness and the Putative Class Members regularly worked substantial overtime.

26. For example, QIS employed Maness as a Coating Inspector from approximately August 2018 until December 2018.

27. Maness typically worked a minimum of 12 hours a day, for 2 weeks at a time.

28. Thus, during his two-weeks on, Maness regularly worked 84 hours each workweek, well over the 40-hour overtime threshold.

29. Maness and the Putative Class Members were not guaranteed a salary by QIS.

30. Maness and the Putative Class Members were not paid on a salary basis by QIS.

31. Maness and the Putative Class Members were not employed in any bona fide executive, administrative, or professional capacity.

32. Maness and the Putative Class Members did not have the authority to hire, fire, and/or discipline any of QIS's employees.

33. QIS did not pay Maness and the Putative Class Members one and one-half times their regular rates of pay for all hours worked, when they worked in excess of 40 hours in a work week.

34. Maness' and the Putative Class Members' primary job duties did not require them to exercise discretion or independent judgment with respect to matters of significance.

35. Indeed, Maness' and the Putative Class Members' job duties were formulaic and not highly specialized.

36. Maness and the Putative Class Members were required to report the days worked to QIS, not the hours they worked.

37. The work Maness and the Putative Class Members performed was an essential and integral part of QIS's core business.

38. During Maness' and the Putative Class Members' employment with QIS, it and/or the company QIS contracted with exercised control over all aspects of their jobs.

39. QIS and/or the company it contracted with controlled all the significant or meaningful aspects of the job duties performed by Maness and the Putative Class Members.

40. Even though Maness and the Putative Class Members often worked away from QIS's offices, QIS still controlled all aspects of their job activities by enforcing mandatory compliance with QIS's and/or its client's policies and procedures.

41. QIS directly determined Maness' and the Putative Class Members' rates of pay, work schedule, and prohibited them from working other jobs for other companies while working on jobs for QIS.

42. Very little skill, training, or initiative was required of Maness and the Putative Class Members to perform their job duties.

43. Indeed, the daily and weekly activities of Maness and the Putative Class Members were routine and largely governed by standardized plans, procedures, and checklists created by QIS and/or its clients. Virtually every job function was pre-determined by QIS and/or its clients, including the tools to use at a job site, the data to compile, the schedule of work, and related work duties. Maness and the Putative Class Members were prohibited from varying their job duties outside of the pre-determined parameters.

44. Moreover, the job functions of Maness and the Putative Class Members were primarily manual labor/technical in nature, requiring little to no official training, much less a college education or other advanced degree.

45. Maness and the Putative Class Members did not have any supervisory or management duties.

46. All of the Putative Class Members perform the same or similar job duties and are subjected to the same or similar policies and procedures which dictate the day-to-day activities performed by each person.

47. The Putative Class Members also worked similar hours and were denied overtime as a result of the same illegal pay practice.

48. It is undisputed that Maness and the Putative Class Members are operating oilfield machinery, performing manual labor, and working long hours out in the field.

49. QIS's policy of failing to pay Maness and the Putative Class Members overtime violates the FLSA because they were performing non-exempt job duties.

## CAUSE OF ACTION - FLSA VIOLATIONS

50. QIS violated the FLSA by employing Maness and the Putative Class Members, non-exempt employees, for workweeks longer than 40 hours without paying them overtime.

51. QIS knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Maness and the Putative Class Members overtime.

52. QIS's failure to pay overtime to Maness and the Putative Class Members was not reasonable, nor was the decision not to pay overtime made in good faith.

53. Accordingly, Maness and the Putative Class Members are entitled to overtime under the FLSA in an amount equal to 1 and ½ times their rate of pay, plus liquidated damages, attorney's fees and costs.

### COLLECTIVE ACTION ALLEGATIONS

54. Maness incorporates all previous paragraphs and alleges that the illegal pay practices QIS imposed on Maness were likewise imposed on the Putative Class Members.

55. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

56. Numerous other individuals who worked with Maness indicated they were paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by the FLSA.

57. Based on his experiences and tenure with QIS, Maness is aware that QIS's illegal practices were imposed on the Putative Class Members.

58. The Putative Class Members were all not afforded the overtime compensation when they worked in excess of forty (40) hours per week.

59. QIS's failure to pay wages and overtime compensation at the rates required by the FLSA result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

60. Maness' experiences are therefore typical of the experiences of the Putative Class Members.

61. The specific job titles or precise job locations of the Putative Class Members do not prevent collective treatment.

62. Maness has no interests contrary to, or in conflict with, the Putative Class Members. Like each Putative Class Member, Maness has an interest in obtaining the unpaid overtime wages owed to him under the FLSA.

63. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

64. Absent this action, many Putative Class Members likely will not obtain redress of their injuries and QIS will reap the unjust benefits of violating the FLSA.

65. Furthermore, even if some of the Putative Class Members could afford individual litigation against QIS, it would be unduly burdensome to the judicial system.

66. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the Putative Class and provide for judicial consistency.

67. The questions of law and fact common to the Putative Class Members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

    a. Whether QIS employed the Putative Class Members within the meaning of the FLSA;

    b. Whether QIS's day rate pay practice meets the salary-basis test;

    c. Whether QIS's decision to not pay time and a half for overtime to the Putative Class Members was made in good faith;

    d. Whether QIS's violation of the FLSA was willful; and

    e. Whether QIS's illegal pay practices were applied uniformly across the nation to all Putative Class Members.

68. Maness' claims are typical of the claims of the Putative Class Members. Maness and the Putative Class Members sustained damages arising out of QIS's illegal and uniform compensation policy.

69. Maness knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

70. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective action treatment.

### JURY TRIAL

71. Maness requests a trial by jury.

### RELIEF SOUGHT

WHEREFORE, Maness prays for judgment against QIS as follows:

    a. An Order designating this lawsuit as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all Putative Class Members with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

    b. For an Order pursuant to Section 16(b) of the FLSA finding QIS liable for unpaid back wages due to Maness and the Putative Class Members for liquidated damages equal in amount to their unpaid compensation;

    c. For an Order awarding attorneys' fees, costs, and pre- and post-judgment interest at the highest available rates; and

    d.  For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully Submitted,

By: */s/ Michael A. Josephson*
**Michael A. Josephson**
Fed. ID No. 27157
State Bar No. 24014780
**Andrew W. Dunlap**
Fed. ID No. 1093163
State Bar No. 24078444
**Richard M. Schreiber**
Fed. ID No. 705430
State Bar No. 24056278
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100
Fax: (713) 352-3300
adunlap@mybackwages.com
mjosephson@mybackwages.com
rschreiber@mybackwages.com

**AND**

**Richard J. (Rex) Burch**
Fed. Id. 21615
State Bar No. 24001807
**BRUCKNER BURCH, PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Tel: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**